UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-cv-00204-FDW

| | |
|---|---|
| MELANIE L. STREET, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| NANCY A. BERRYHILL | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Plaintiff Melanie L. Street's Motion for Summary Judgment (Doc. No. 9) filed on December 1, 2017, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 15) filed on April 2, 2018. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Security Income ("SSI").

Having reviewed and considered the written arguments, administrative records, and applicable authority, and for the reasons stated herein, the Court DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 9) and GRANTS Commissioner's Motion for Summary Judgment (Doc. No. 15).

**I. BACKGROUND**

The procedural history of this case is undisputed. Plaintiff, Melanie L. Street, filed an application for SSI on December 16, 2013, alleging disability beginning December 1, 2007. (Doc. No. 8-1, p. 222). The application was denied initially on July 18, 2014, and denied again at reconsideration on February 10, 2015. Id. Plaintiff filed a written request for a hearing on June 2,

1

2015. Id. Administrative Law Judge John L. McFadyen ("ALJ") conducted the hearing on April 26, 2016.

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of claims for disability under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 16, 2013, the date she applied for SSI. Id. at 224. At step two of the analysis, the ALJ found Plaintiff had the following severe impairments: affective disorder and anxiety-related disorder. Id. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Id.

Before turning to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"), stating as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine, repetitive work with occasional supervision, occasional contact with coworkers, and low production standards.

Id. at 226. At step four, the ALJ found that Plaintiff had no past relevant work. Id. at 230. Finally at step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. at 231. Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Id. at 232.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability

determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe

3

impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that

could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff asserts two assignments of error in Defendant's disability decision: (1) the ALJ failed to explain why limitations documented in the medical opinions he gave great weight were not included in Plaintiff's RFC; and (2) the ALJ failed to obtain an explanation from the vocational witness ("VE") for testimony that allegedly conflicts with the Dictionary of Occupational Titles ("DOT"). (Doc. No. 10, p. 4-5). The Court addresses each assignment of error in turn.

**A. Plaintiff's RFC**

Plaintiff contends the ALJ erred by failing to include in Plaintiff's RFC (i) restrictions to account for medical opinions he gave great weight and (ii) restrictions to account for the ALJ's

5

step-three finding that Plaintiff had moderate difficulties in concentration, persistence, or pace. (Doc. No. 10, p. 5-7).

### a. Medical Opinions

Plaintiff argues the ALJ erred because he gave great weight to the opinions of psychologists Michael F. Fiore, Ph.D, and Keith O. Noles, Ph.D, but did not properly incorporate their opinions in Plaintiff's RFC. (Doc. No. 10, p. 6).

In his written decision, the ALJ stated that he gave great weight to the opinions of consultative examiner Dr. Fiore and state agency psychological consultant Dr. Noles. Plaintiff notes that Dr. Fiore opined that she could understand and follow "simple work-related instructions." (Doc. No. 10, p. 5-6). Plaintiff further notes that Dr. Noles stated she has "the ability to understand and remember simple and very short instructions." Id. Plaintiff argues that the ALJ failed to provide for these opinions in the RFC. Id. Defendant retorts that such argument lacks merit as the ALJ accounted for these opinions by restricting Plaintiff to "simple, routine, repetitive work." (Doc. No. 8-1, p. 226).

Despite Plaintiff's arguments, the Court fails to see any meaningful distinction between the restrictions suggested by the medical opinions and those accounted for in the RFC. Plaintiff fails to explain to the Court or cite any precedent indicating how the relevant RFC limitations are inconsistent with the medical opinions. Accordingly, the Court is satisfied that in limiting Plaintiff to "simple, routine, repetitive, work" the ALJ's determination is consonant with the opinions of Dr. Fiore and Dr. Noles that Plaintiff can follow simple instructions. Accordingly, Plaintiff's assignment of error is overruled.

### b. Concentration, Persistence, or Pace

Despite finding that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace, Plaintiff avers the ALJ failed to discuss in his RFC analysis whether Plaintiff is able to stay on task. (Doc. No. 10, p. 7). Plaintiff further contends the ALJ failed to include any discussion explaining why such difficulties do not translate into a limitation in the RFC. Id. at 8. Defendant argues the ALJ properly accounted for Plaintiff's difficulties in maintaining concentration by limiting Plaintiff to "simple, routine, repetitive work" with "occasional contact with coworkers" and "low production standards." (Doc. No. 16, p. 9).

The Fourth Circuit held in Mascio that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). In other words, "Mascio held that the ability to perform simple work is not the same as having the ability to stay on task during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace." Minor v. Berryhill, No. CV 9:17-1087-TMC-BM, 2018 U.S. Dist. LEXIS 42125, 2018 WL 1305181, at *5 (D.S.C. Feb. 20, 2018), report and recommendation adopted, No. CV 9:17-1087-TMC, 2018 U.S. Dist. LEXIS 39958, 2018 WL 1251723 (D.S.C. Mar. 12, 2018) (citing Mascio, 780 F.3d 638).

While Plaintiff acknowledges that the ALJ limited her to "simple, routine, repetitive work," notably absent from her argument is any mention of the ALJ's further direction limiting Plaintiff to work with "low production standards." Defendant persuasively argues that such a production-rate limitation is sufficient to account for Plaintiff's moderate difficulties in concentration, persistence, or pace. While Plaintiff makes no argument in regards to production-rate limitations,

7

the Court notes there are conflicting precedents on the issue[1]. Recently, however, this Court summarized the current applicable case law in the Fourth Circuit:

> It is true that many of the district courts in North Carolina—including this Court—have found that additional limitations, such as nonproduction pace, do not sufficiently account for a moderate limitation in concentration, persistence, or pace in light of Mascio. See Kittrell v. Colvin, No. 5:14-cv-163-RJC, 2016 WL 1048070, at *4-5, 2016 U.S. Dist. LEXIS 33929 at *11 (W.D.N.C. Mar. 16, 2016) (unpublished). It is also true that other courts have found that such limitations do adequately address impairments in concentration, persistence or pace when either supported by the medical record or when added to other limitations, such as a stable work environment. See, e.g. Linares v. Colvin, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact.").
>
> Since Mascio, the Fourth Circuit has yet to address the district courts' various interpretations of non-production limitations' effects on moderate limitations of CPP. Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017), seems most relevant. In that case, the ALJ assigned an RFC where the claimant "can work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] with no public contact." Sizemore, 878 F.3d at 79. The Fourth Circuit concluded that the medical record "provided substantial support for the ALJ's finding that, despite [the claimant's] overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact.'" Id. at 81.
>
> In an unpublished opinion in Jarek v. Colvin, the Fourth Circuit affirmed a district court's finding that an ALJ's detailed analysis of medical opinions "provide[d] substantial evidence supporting the RFC limitation to simple, routine, repetitive tasks not at an assembly line pace." No. 3:14CV620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015), report and recommendation adopted, No. 314CV00620FDWDSC, 2016 WL 626566 (W.D.N.C. Feb. 16, 2016), aff'd, 672 Fed.Appx. 332 (4th Cir. 2017) (emphasis in original). Combined, the above cases

---

[1] See Linares v. Colvin, No. 5:14-cv-120-GCM, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (finding that restrictions to simple, routine, repetitive tasks in a stable work environment at a nonproduction pace with only occasional public contact sufficiently accounted for the claimant's moderate limitations in CPP because the "nonproduction pace" accounted for limitations in pace and the "stable work environment with only occasional public contact" accounted for limitations in concentration and persistence); but see Neufeld v. Colvin, No. 3:15-CV-174-RJC, 2016 WL 3436414, at *5 (W.D.N.C. June 15, 2016) (finding that limitations to "simple, routine, repetitive tasks, in a nonproduction environment" did not adequately address the plaintiff's moderate limitations in concentration, persistence, or pace as required by Mascio.)

convince this Court that non-production or non-assembly line pace limitations sufficiently account for a claimants' moderate limitation in CPP. Because these limitations directly address a claimant's ability to stay on task, no further explanation is required "at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." Grant v. Colvin, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016).

Allen v. Berryhill, No. 3:16-CV-00851-RJC, 2018 WL 1175231, at *4–5 (W.D.N.C. Mar. 6, 2018).

The Court adopts the reasoning from the cases above, as well as others similarly interpreting Mascio and concludes that, here, the ALJ sufficiently explained Plaintiff's ability to stay on task and accounted for such ability in the RFC by restricting Plaintiff to "simple, routine, repetitive work" with "occasional contact with coworkers" and "low production standards." Furthermore, the ALJ supports these mental RFC limitations by discussing Plaintiff's examination findings, her reported daily activities, and the medical opinions of Dr. Fiore and Dr. Noles. Accordingly, Plaintiff's assignment of error is overruled.

### B. Vocational Expert Testimony

As stated above, the ALJ found, in part, that Plaintiff is limited to "simple, routine, repetitive work with occasional supervision, occasional contact with coworkers, and low production standards." (Doc. No. 8-1, p. 226). In posing questions to the VE, Plaintiff contends the ALJ erred by failing to obtain adequate explanations from the VE for apparent conflicts with the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. No. 10, p. 11-12).

When the ALJ relies on the testimony of a VE in step five to determine disability, the ALJ has the responsibility to (1) inquire whether there are any conflicts between the VE's testimony and the DOT and (2) elicit a reasonable explanation for any apparent conflict from the VE. Pearson

v. Colvin, 810 F.3d 204, 208-210 (4th Cir. 2005); SSR 00-4p.  A conflict is apparent if the "[VE's] testimony seems to, but does not necessarily, conflict with the [DOT]." Pearson, 810 F.3d at 209. "[I]f the ALJ does not elicit [an] explanation [for an apparent conflict], then the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision." Id.; see also Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016) ("[W]e held that a VE's testimony that apparently conflicts with the DOT can only provide substantial evidence if the ALJ received an explanation from the VE explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the VE's testimony rather than the DOT.").

The Court addresses each alleged conflict below.

### a. Apparent Conflict:  Marginal Education

The ALJ found Plaintiff to have a "marginal education."[2]  Plaintiff contends this finding and its incorporation in the VE's testimony conflicts with the DOT.  In support of this assertion Plaintiff cites not to the DOT but rather to the Occupational Outlook Handbook ("OOH"). Although SSR 00-4p requires ALJs to resolve apparent conflicts between VE testimony and the DOT, Plaintiff cites no authority for her assertion that the ALJ must resolve apparent conflicts between VE testimony and the OOH.  Furthermore, district courts in North Carolina have explicitly rejected the proposition that an ALJ must resolve apparent conflicts between VE testimony and publications other than the DOT, including the OOH. See Best v. Berryhill, No. 4:16-CV-268-D, 2017 WL 6626320 (Dec. 28, 2017) ("An ALJ is not required to address apparent conflicts between the VE's testimony and the Occupational Outlook Handbook."); see also

---

[2] In making this finding the ALJ noted that Plaintiff had completed the eighth grade and ceased attending school in the ninth grade.

Spurlock v. Berryhill, No. 1:17-CV-411, 2018 WL 791302, at *8 (M.D.N.C. Feb. 8, 2018). As Plaintiff fails to cite an apparent conflict with the DOT, Plaintiffs argument, thus, is without merit.

### b. Apparent Conflict: Reasoning Level 2

When asked whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC, the VE identified the jobs of cloth folder, sorter, and table worker. (Doc. No. 8-1, p. 231). The ALJ determined the VE's testimony to be consistent with the DOT. Id. According to the DOT, the jobs cloth folder and sorter have a Reasoning Level of 2. Such a Reasoning Level requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." 573.687-034 SORTER, DICOT 573.687-034. Plaintiff contends that this is inconsistent with the medical opinions discussed above who opined that Plaintiff needs "simple work-related instructions" or "simple and very short instructions."

In support of her argument, Plaintiff cites the Fourth Circuit as stating "there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." Henderson v. Colvin, 643 Fed. App'x 273, 276-77 (4th Cir. 2016). In the case at bar, however, the ALJ did not limit Plaintiff to only "one-or two-step instructions," id.; he instead limited her to "simple, routine, repetitive work with occasional supervision, occasional contact with coworkers, and low production standards." (Doc. No. 8-1, p. 226). Plaintiff fails to demonstrate to the Court how this conflicts with the parameters of Reasoning Level 2. Conversely, this Court has consistently held there is no apparent conflict between an RFC limitation to simple, routine, repetitive work and Reasoning Level 2 occupations. See Hammond v. Berryhill, 2018 BL 102560, 7 (W.D.N.C Mar.

23, 2018) (Plaintiff failed to show how a limitation to "simple, work-related instructions and directions . . . simple, routine tasks, but not at a production pace" in both the RFC and the hypothetical to the VE is a conflict with the Reasoning Level 2); see also Hicks v. Astrue, No. 5:11-CV-182-RLV-DSC, 2012 WL 6840580, at *3 (W.D.N.C. May 22, 2012) ("This Court has recently held that there is no apparent conflict between an RFC limitation to simple, routine, repetitive work and Reasoning Level two or three jobs.").

Additionally, Plaintiff's contention that the VE's testimony is in conflict with the OOH and O*Net, for reasons previously stated, is of no moment. Without a showing of an apparent conflict, the ALJ's reliance on the VE's testimony was proper. Plaintiff's assignment of error is overruled.

### c. Apparent Conflict: Low Production Work

Plaintiff further contends an apparent conflict exists with the DOT and the VE's testimony that a hypothetical individual similarly situated to Plaintiff could perform "low production" work. (Doc. No. 10, p. 18-19). Plaintiff contends that the jobs identified by the VE are "all part of a production process in production settings" under the DOT, and the ALJ erred by failing to have the VE explain this apparent conflict. Id. The Court is not persuaded by Plaintiff's assertion. Plaintiff fails to identify any particular portion of the DOT descriptions that conflicts with the ALJ's "low production" limitation. Indeed, a review of the descriptions themselves reveals the ALJ's limitation to be consistent with the level of production contemplated by the DOT for these jobs. For example, the DOT description of Sorter reads as follows:

> Sorts burned clay products, such as brick, roofing tile, and sewer pipe, according to form, color, and surface characteristics: Picks up products from kiln car, pallet, or handtruck, and examines products for defects, such as cracks, chipped edges, squareness, and discoloration. Sorts products into piles according to varying

degrees of characteristics. Discards unusable products. May stack bricks in specified pattern for banding by machine

573.687-034 SORTER, DICOT 573.687-034. The Court finds nothing in this description that would require a greater level of production than that prescribed by the ALJ.

Plaintiff again points to information in the O*Net as indicating that the occupations of Sorter and Table Hand require workers to meet deadlines, but as previously discussed an ALJ is not required to resolve conflicts between the VE's testimony and publications other than the DOT. As such, the Court finds no apparent conflict.

### d. Apparent Conflict: "Occasional Supervision" and "Occasional Contact with Coworkers"

Lastly, Plaintiff takes issue with the VE's use of the phrases "occasional supervision" and "occasional contact with coworkers." Plaintiff argues the ALJ erred by failing to explain, both in his decision and to the VE, the meaning of the word "supervision," thus "leaving the Court to guess." (Doc. No. 10, p. 19). But the Court need not guess as the Plaintiff gives no reason, and the Court can find none, why the word "supervision" is ambiguous or should not be construed according to its ordinary meaning. Indeed, this Court and other district courts within North Carolina have consistently affirmed ALJ decisions using identical language. See Wise v. Berryhill, No. 1:17-CV-00092-FDW, 2017 WL 6349241, at *4 (W.D.N.C. Dec. 12, 2007) (affirming an ALJ's decision restricting the claimant to "limited interaction with co-workers" and "occasional supervision"); see also Miller v. Colvin, No. 1:14-CV-948, 2016 WL 430496, at *3 (M.D.N.C. Feb. 3, 2016) (affirming an ALJ's decision restricting the claimant to "occasional supervision").

Plaintiff also contends that the jobs identified by the VE and accepted by the ALJ exceed the limitation of "occasional" contact with supervisors and coworkers and therefore poses an

13

apparent conflict. Plaintiff, however, acknowledges that the DOT does not specify the frequency of contact a worker has with supervisors or coworkers, rather she again cites to the O*Net and other publications to argue the jobs the VE identified would require more than "occasional" contact. (Doc. No. 10, p. 19). Plaintiff's argument fails for the reasons already discussed, and accordingly Plaintiff's assignment of error is overruled.

## IV. CONCLUSION

In reviewing all assignments of error by Plaintiff, the Court concludes the ALJ's decision sufficiently explains the basis for the decision and is supported by substantial evidence.

IT IS THEREFORE ORDERED for the foregoing reasons that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 15) is GRANTED, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: April 24, 2018

Frank D. Whitney
Chief United States District Judge